## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KAREN A. DRISKILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-1288-MLB-KGG |
| ) | |
| WAL-MART STORES, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## **COMPLAINT**

COMES NOW Plaintiff Karen A. Driskill, by and though her counsel, and for her causes of action against the Defendant Wal-Mart Stores, Inc., alleges and states as follows:

### I.  PARTIES

1.  Plaintiff Karen A. Driskill is an individual and a resident of Kansas.

2.  Defendant Wal-Mart Stores, Inc. ("Wal-Mart" [1] or "Defendant"), is a foreign, for-profit corporation headquartered in Bentonville, Arkansas.  Defendant transacts business in the state of Kansas and may be served with legal process through its registered agent: The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

---

[1] Wal-Mart Stores, Inc. (NYSE: WMT) is the legal name of the corporation.  The name "Walmart," expressed as one word and without hyphenation, is a trademark of the company and is used by the company analogously to describe the company and its stores.

## II.  JURISDICTION AND VENUE

3. This is an employment case arising under the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA" or "ADAAA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, The Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (ADEA), and the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* (ERISA). This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Plaintiff has fully exhausted her administrative remedies under the ADEA. On January 28, 2011, Plaintiff filed an Age Discrimination charge with the Kansas Human Rights Commission (KHRC) and 60 days has passed from the commencement of those proceedings. *Driskill v. Wal-Mart Stores, Inc.,* Dkt. No. 34442-11W.  On September 6, 2011, Plaintiff received a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC). *Driskill v. Wal-Mart Stores, Inc.,* Charge No. 28D-2011-00306.

5. Plaintiff has fully exhausted her administrative remedies under Title VII and the ADA.  On September 6, 2011, Plaintiff received a right-to-sue letter from the EEOC. *Driskill v. Wal-Mart Stores, Inc.,* Charge No. 28D-2011-00306.

6. The unlawful practices and actions alleged below were committed within the state of Kansas, and venue is properly laid in this Court by virtue of 28 U.S.C. § 1391(b).

### III.  FACTS

**A.     Walmart.**

7.     Walmart operates 9700 retail units under 60 different banners in 28 countries.  In fiscal year 2010, Walmart recorded sales of $405 billion and employed 2.1 million associates worldwide.  In fiscal 2011, Walmart U.S. had net sales exceeding $260 billion from 3,804 retail stores.

8.     In the United States, Walmart stores are organized into "Markets," similar to a district, supervised by a Market Manager.

9.     At all times material hereto, Jay Cordray ("Cordray") was the Market Manager over eight (8) Walmart Stores in the Wichita, Kansas, metro area, which included the Newton, Kansas, Walmart.  Cordray's "Market team" included 2,400 Walmart associates, with 124 members of management and 11 direct reports.

10.     In September 2010, Shane Meier ("Meier"), the manager of the Newton Walmart, resigned to accept other employment. [2]  Dale Thomas ("Thomas"), the Co-Manager / Shift Manager from the Walmart Store in El Dorado, Kansas, was assigned as the temporary manager of the Newton Walmart.

11.     Prior to September 2010, Walmart held management meetings where upper management expressed the opinion that, because of economic conditions, the labor pool had a "lot of talent" and that Walmart needed to make room in its workforce to "move them up."  The "talent pool" referred to was comprised of persons who were younger than Plaintiff.

---

[2] Meier resigned to accept a position as the Chief Operations Officer for the Newton Medical Center.

12. As a benefit of employment with Walmart, employees are entitled to participate in group healthcare insurance plans, including medical and critical illness insurance.

13. Walmart is self-insured for the healthcare insurance it provides to its employees as an employment benefit. In Kansas, Walmart used Blue Cross and Blue Shield of Kansas to administer its health care insurance benefit program.

14. In October 2010, Walmart announced to its employees that, because "health care prices continue to rise," employees would "see some increased premiums, higher deductibles and out-of-pocket maximums" in the medical plans.

**B.   Plaintiff's employment at Walmart.**

15. Plaintiff was employed by Walmart for 22 years, from August 19, 1988, to November 10, 2010. Plaintiff began her employment as an hourly associate. At the time of her discharge from employment, Plaintiff was a co-manager / shift manager at Walmart Store # 2428, in Newton, Kansas.

16. At the time of her discharge from employment, Plaintiff was a 55-year-old female.

17. During Plaintiff's employment, she had never been written up for any disciplinary action.

18. During Plaintiff's employment, she always received good employment evaluations.

19. At the time of Plaintiff's discharge from employment, she had been in a management position with Walmart for 18 of her 22 years of employment.

20. On more than one occasion before Meier resigned, Cordray told Meier that he should "get rid" of Plaintiff. Meier refused because Plaintiff got along well with customers and associates; she was a competent co-manager and she was dependable.

21. During the last week of September, 2010, Thomas asked Plaintiff to meet him at McDonald's, so they could "talk for awhile." The first substantive question that Thomas asked was: "Aren't you about ready to retire?" Plaintiff replied, "No, are you kidding, not until I am at least 65." Thomas then commented that Plaintiff ought to have a lot in profit sharing "after all of the years" that Plaintiff had been employed by Walmart. Plaintiff told Thomas that she was a single woman, that she had a medical condition and that she could not afford to retire because of medical expenses. Thomas then asked Plaintiff: "Medical condition?" Plaintiff responded that it was multiple sclerosis and that her monthly prescription medication was expensive.

**C.    Plaintiff's disability.**

22. In February 2008, Plaintiff was diagnosed with multiple sclerosis (MS), a disability under the ADAAA.

23. Walmart knew of Plaintiff's disability.

   (a) In 2008, Plaintiff was on the list for promotion to store manager. After she was diagnosed with MS, Plaintiff voluntarily removed her name from the promotion list. When the Walmart HR manager asked Plaintiff why she withdrew her name from the promotion list, Plaintiff explained the MS diagnosis and medical condition to her.

        (b)       After the diagnosis, Plaintiff discussed her MS with Meier.

        (c)       Cordray knew Plaintiff had MS.

24. Plaintiff's disability has been treated and controlled by medication: Avonex (interferon beta-1a) 30 mcg Pre-filled Syringe IM injections one-time weekly.

25. The actual cost of the medication was $2,998.00 per month.

26. Prior to October 2010, Plaintiff's cost, with her Walmart insurance card, was $536.00 per month, until Plaintiff's annual out-of-pocket threshold was met.

27. In 2011, Plaintiff's monthly premium for medical insurance was expected to rise from $131.20 to $285.80.

**D.    Plaintiff's discharge from employment.**

28. On October 11, 2010, Thomas placed Plaintiff on a Performance Improvement Program (PIP), purportedly because of overstocked back-room inventory, for which Plaintiff had no authority to control. Plaintiff objected. Thomas placed Plaintiff on the PIP less than one month after he was assigned as the temporary store manager and approximately two weeks after he suggested that Plaintiff should retire and when he learned of Plaintiff's disability.

29. On October 13, 2010, Cordray forwarded an email from Walmart employee Bradley Voran ("Voran") to Plaintiff and others, addressed to "Team," praising Thomas for his leadership. Plaintiff called Voran by telephone and told him that, although he probably did not intend his email to receive wide distribution, it was out there. Voran told Plaintiff that he did not intend the email to be distributed. The telephone call lasted between 5 and 10 minutes.

30. On October 15, 2010, Thomas directed Plaintiff to write a statement about her telephone call to Voran. Thomas asked Plaintiff if she put Voran in for paid time because of the telephone call. Plaintiff told Thomas that she had not. Thomas told Plaintiff that she needed to do so.

31. The next day, on October 16, 2010, Plaintiff told Lorna Hakes, Walmart Personnel Manager, to put Voran in for 15 minutes of time for pay, which she did.

32. During the first part of November 2010, during a store visit by Cordray, Plaintiff asked to speak with him. Plaintiff objected to the PIP given to her by Thomas, because the overstock of back-room inventory was not within her control.

33. On November 10, 2010, Thomas directed Plaintiff to report to the Market Office, which was located in the East Kellogg Walmart Store in Wichita, Kansas. At the Market Office, Plaintiff met with Cordray and a Human Resources representative. Cordray and the HR representative fired Plaintiff for requiring Voran to work "off the clock" by calling him while he was not working and failing to pay him for the time. Plaintiff told Cordray that she put Voran in for paid time for the call. Cordray told Plaintiff that he had no choice but to terminate Plaintiff's employment for not putting time in for Voran in a timely manner. Walmart had, in fact, paid Voran for the time.

34. Walmart has a progressive disciplinary policy for policy violations, which was not followed in Plaintiff's discharge from employment.

35. Walmart's reason for Plaintiff's discharge from employment was false and contrived as a subterfuge for the unlawful discriminatory actions against Plaintiff.

36. Thomas and Cordray are both males who are significantly younger than Plaintiff.

37. Cordray replaced Plaintiff with male employees who were younger than Plaintiff.

## IV.  CAUSES OF ACTION

### COUNT 1.  WRONGFUL TERMINATION IN VIOLATION OF THE ADA

38. Plaintiff incorporates paragraphs 1 through 37 of this complaint.

39. Plaintiff is a person with a disability because:

   (a) Plaintiff has a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities and/or the operation of one or more major bodily functions;

   (b) Plaintiff has a record of such an impairment; and/or

   (c) Walmart regarded Plaintiff as having such an impairment.

40. Plaintiff was a qualified individual who, with or without reasonable accommodations, could perform the essential functions of the position in which she was employed by Walmart.

41. Walmart placed Plaintiff on a PIP based upon an actual or perceived disability.

42. Walmart discharged Plaintiff from employment based upon an actual or perceived disability.

43. Plaintiff suffered damages and is entitled to an award of damages for back pay and front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant for the following relief:

A.	For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss;

B.	For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C.	For punitive damages;

D.	For Plaintiff's reasonable attorneys fees and the costs of this action;

E.	For any such other and further relief this Court deems just and proper.

F.	Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

## COUNT 2.  TITLE VII - SEX DISCRIMINATION

44.	Plaintiff incorporates paragraphs 1 through 43 of this complaint.

45.	Walmart discriminated against Plaintiff because of her sex by replacing her with a male employee.

46.	Walmart discriminated against Plaintiff because of her sex by placing Plaintiff on a PIP for a reason that was not within her authority or ability to control.

47.	Walmart discriminated against Plaintiff because of her sex by terminating discharging plaintiff from employment for a false and contrived reason.

48.	Plaintiff's sex was a motivating factor in Walmart's decisions to place Plaintiff on a PIP and to discharge her from employment.

49. Plaintiff suffered damages and is entitled to an award of damages for back pay and front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant for the following relief:

A. For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss;

B. For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C. For punitive damages;

D. For Plaintiff's reasonable attorneys fees and the costs of this action;

E. For any such other and further relief this Court deems just and proper.

F. Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

### COUNT 3.  AGE DISCRIMINATION

50. Plaintiff incorporates paragraphs 1 through 49 of this complaint.

51. Plaintiff was over forty (40) years old at the time she was placed on a PIP and at the time of her discharge from employment.

52. Walmart willfully discriminated against Plaintiff because of her age by replacing her with persons who were younger than Plaintiff.

53. Walmart willfully discriminated against Plaintiff because of her age by placing Plaintiff on a PIP for a reason that was not within her authority or ability to control.

54. Walmart willfully discriminated against Plaintiff because of her age by discharging Plaintiff from employment for a false and contrived reason.

55. Plaintiff's age was a motivating factor in Walmart's decision.

56. Plaintiff suffered damages and is entitled to an award of damages for back pay and front pay and compensatory damages, including damages for future pecuniary loss.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant for the following relief:

A. For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages for past and future pecuniary loss;

B. For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C. For liquidated damages and/or pre-judgment interest;

D. For Plaintiff's reasonable attorneys fees and the costs of this action;

E. For any such other and further relief this Court deems just and proper.

F. Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

### COUNT 4.  ERISA DISCRIMINATION

57. Plaintiff incorporates paragraphs 1 through 56 of this complaint.

58. Plaintiff was a participant in employee benefit plans which covered Walmart's employees.

59. Walmart discriminated against Plaintiff for exercising rights to which she was entitled under the employee benefit plans.

60. Walmart interfered with the attainment of rights to which Plaintiff may have become entitled under the employee benefit plans.

61. Plaintiff suffered damages and is entitled to an award of damages for back pay and front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant for the following relief:

A. For monetary damages in excess of $75,000 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss, and for such other and further damages this Court deems just and proper;

B. For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C. For liquidated and/or punitive damages;

D. For Plaintiff's reasonable attorneys fees and the costs of this action;

E. For any such other and further relief this Court deems just and proper.

F.  Plaintiff reserves the right to amend this Complaint or demand for judgment as new information is discovered during the course of this action.

Respectfully submitted,

AYESH LAW OFFICES

By: /s/ Ray E. Simmons
   Mark G. Ayesh, #10175
   Ray E. Simmons, #12296
   8100 East 22nd Street North
   Building 2300, Suite 2
   P. O. Box 781750
   Wichita, KS   67278-1750
   Telephone:  316-682-7381
   E-Mail: mayesh@ayesh.kscoxmail.com
            rsimmons@ayesh.kscoxmail.com
   *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

## DESIGNATION OF TRIAL

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.

By: /s/ Ray E. Simmons
   Mark G. Ayesh, #10175
   Ray E. Simmons, #12296